Commonwealth v. Jenkins.

COMMONWEALTH *vs.* ABIJAH JENKINS.

On the trial of an indictment for receiving stolen goods, evidence is admissible of conversations between the defendant and the thief, before the commission of the offence, making arrangements for receiving the goods.

A witness, who has been impeached by evidence that he previously testified differently, cannot be corroborated by evidence that he had made still earlier statements, not under oath nor in the prisoner's presence, in accordance with his present testimony.

Whether it is ground for setting aside a verdict, that one of the jurors was not an inhabitant of the county, and that this was not known before verdict to the party against whom the verdict was rendered — *quære*.

INDICTMENT for receiving stolen goods. At the trial in the municipal court of Boston, at March term 1858, before *Huntington*, J., the attorney for Commonwealth called as a witness Graham, one of the persons alleged to have stolen the goods, who testified that he and others stole the goods and sold them to the defendant, and that, while selling them, he told the defendant that the goods were stolen, and the name of the person from whom they were stolen.

The attorney then asked the witness whether, before this sale, the defendant had made any agreement to purchase any stolen goods which the witness might bring to him. The defendant objected to this question; but the court overruled the objection; and the witness testified that he had had previous interviews

41 *

with the defendant, at the last of which, about six weeks be-fore the sale, the defendant had told the witness that he would buy any stolen goods which the witness might bring him; that it was not safe to carry them to other brokers; they might get detected.

It appeared that Graham had been called as a witness in the police court, on the preliminary examination of this charge against the defendant.

The defendant's counsel attempted to show, by cross-exam-ination of this and other witnesses, that Graham, in testifying in the police court, had given a different account of the transac-tion from that now given by him. The defendant's counsel however put no question to Graham or any other witness, as to Graham's statements about the transactions in question, at any other time than in his testimony in the police court; nor did they ask him, or any person, when Graham first communicated the facts testified to by him to any one, or whether he had ever made any such communications to any one, other than that made in the police court.

The attorney for the Commonwealth then, for the purpose of confirming and corroborating the testimony of Graham at this trial, was allowed by the court, notwithstanding the defendant's objection, to introduce evidence that Graham, on another occa-sion, when not under oath, and when the defendant was not present, before the examination in the police court, had given substantially the same account of the transaction as that now given by him.

After a verdict of guilty, the defendant moved that it be set aside and a new trial granted, because one of the jurors, returned as a citizen of Boston, was not, at the time of the trial, or when drawn as juror, an inhabitant of the county of Suffolk, but had been for a long time an inhabitant of Charlestown in the county of Middlesex; and because this fact was unknown to the defend-ant or his counsel until after the verdict. But the court declined to hear evidence of this fact, and overruled the motion.

To these several rulings and proceedings of the court the de-fendant excepted.

*J. G. Abbott & D. H. Mason,* for the defendant, upon the admission of the evidence to corroborate Graham, cited the authorities referred to in the opinion, and 2 Russell on Crimes, (7th Amer. ed.) 940 ; 4 Macaulay's Hist. Eng. 676, 677 ; *Deshon* v. *Merchants' Ins. Co.* 11 Met. 199 ; *Howe* v. *Thayer,* 17 Pick. 91 ; *The King* v. *Parker,* 3 Doug. 242 ; *Craig* v. *Craig,* 5 Rawle, 97, 98 ; *Munson* v. *Hastings,* 12 Verm. 346 ; *Gibbs* v. *Linsley,* 13 Verm. 208.

*S. H. Phillips,* (Attorney General,) *& G. W. Cooley,* (County Attorney,) for the Commonwealth, upon the same point, cited *Commonwealth* v. *Wilson,* 1 Gray, 340 ; *Deshon* v. *Merchants' Ins. Co.* 11 Met. 209, 210 ; *Lutterel* v. *Reynell,* 1 Mod. 282 ; *Freind's case,* 13 Howell's State Trials, 32 ; *French* v. *Merrill,* 6 N. H. 465 ; *Henderson* v. *Jones,* 10 S. & R. 322 ; *People* v. *Vane,* 12 Wend. 78 ; *Robb* v. *Hackley,* 23 Wend. 50 ; *Cooke* v. *Curtis,* 6 Har. & Johns. 93 ; *Coffin* v. *Anderson,* 4 Blackf. 395 ; *Beauchamp* v. *State,* 6 Blackf. 299 ; *Wright* v. *Deklyne,* Pet. C. C. 199 ; *State* v. *George,* 8 Ired. 324 ; *State* v. *Dove,* 10 Ired. 469 ; *March* v. *Harrell,* 1 Jones N. C. 329.

BIGELOW, J. 1. Evidence of the conversation between the defendant and one of the principals in the larceny of the goods, which the defendant was alleged to have received, was clearly competent. Although the conversation took place several weeks before the commission of the crime charged in the indictment, it had nevertheless a direct tendency to prove the guilty knowledge of the defendant in receiving the stolen property. Indeed, if believed, it proved that the goods were taken by the defendant into his possession in pursuance of a previous understanding with one of the principal thieves, that he would receive any stolen property which he would bring to him. It is no objection to the competency of this evidence, that it was cumulative, and that the same witness testified to other facts which also tended very strongly to show the defendant's guilt. The court cannot reject evidence, which is legally competent and relevant to the issue, merely because in their judgment it may be superfluous.

2. The more interesting and important question presented by

the exceptions arises on the admissibility of evidence offered by the government of statements of the accomplice, who was a witness in support of the indictment, to third persons, concerning the transactions to which he had testified at the trial. The purpose of the government in offering these statements was to corroborate the testimony of the accomplice, which the defendant had sought to invalidate and discredit by proof that on the preliminary examination before the police court the witness had given a different account of his interviews and dealings with the defendant from that to which he had testified before the jury. Although there is some contrariety of opinion in the books on the question of the competency of such evidence, it seems to us that on principle it ought to be excluded. It has no legitimate or logical tendency to establish the corroboration for which it is offered. How did the case stand on the evidence of the accomplice, when the government offered the statements objected to ? He had testified in behalf of the government to an account of his dealings with the defendant concerning the stolen property. The counsel for the defendant then called witnesses to show that at a previous time he had given under oath a different account of this same transaction. This evidence was offered, not for the purpose of proving the truth of such previous statements, but to show that he was unworthy of belief, inasmuch as he had given two inconsistent accounts of the same transaction, one of which was necessarily untrue. From such evidence the inference was fair and legitimate that the testimony of the witness before the jury was not to be relied on. Standing by itself, it would be difficult, if not impossible, for the jury to believe it, with the fact before them that he had made a statement before the police court, which was inconsistent with his present testimony and contradictory to it. It did not relieve the difficulty, or in any degree corroborate the last story told by the witness, to show that previously he had made similar statements of the transaction. The discredit arising from the fact that he had made contradictory statements remained untouched. The contradiction was not disproved by such evidence, and this was all that the prior statements was offered to establish. Clearly

evidence of such prior statements was not competent as substantive proof; it was purely hearsay. It was only admissible to support the credit of the witness. The utmost that could be claimed for it in this view would be, that it rendered the last statement more probable and worthy of credit, because, although the witness had made a contradictory statement, he had made another statement similar to those to which he had testified before the jury. But such a corroboration is altogether too slight and remote. Indeed, if admitted and followed out to its legitimate result, it might properly lead to a protracted inquiry to ascertain which of the two statements had been made most frequently by the witness; and when this was determined, then it would be necessary to ask the jury to believe the witness, if he had repeated the statement made before them a greater number of times than the contradictory one which had been proved to impeach his evidence. It is obvious that such a course of inquiry would furnish no means by which the credit due to the testimony of a witness could be satisfactorily ascertained. 1 Greenl. Ev. § 469. 2 Phil. Ev. (3d Amer ed.) 445. 1 Stark. Ev. (1st Amer. ed.) 147. 3 Stark. Ev. 1758. Bul. N. P. 294. *Ware* v. *Ware*, 8 Greenl. 42. *Robb* v. *Hackley*, 23 Wend. 50. *Dudley* v. *Bolles*, 24 Wend. 465.

The decision of the point raised in this case is not to be understood as conflicting with a class of cases, in which a witness is sought to be impeached, by cross-examination or by independent evidence, tending to show that at the time of giving his evidence he is under a strong bias or in such a situation as to put him under a sort of moral duress to testify in a particular way. In such case, it is competent to rebut this ground of impeachment and to support the credit of the witnesses by showing that, when he was under no such bias, or when he was free from any influence or pressure, he made statements similar to those which he has given at the trial. Another similar class of decisions, resting on a like principle, is also to be distinguished from the case at bar, namely, when an attempt is made to impeach the credit of a witness by showing that he formerly withheld or concealed the facts to which he has now testified. In

such cases, it is competent to show that the witness, at an early day, as soon as a disclosure could reasonably have been made, did declare the facts to which he has testified. Such in substance was the case of *Commonwealth* v. *Wilson*, 1 Gray, 340. The statement in the exceptions, of the circumstances under which the evidence objected to in this case was admitted, carefully excludes all facts which would bring it within either of the above classes of decisions.

3. As the case must go to a new jury, it is not necessary to consider the question raised in relation to the alleged incompetency of one of the jurors who composed the panel by which the prisoner was tried. *Exceptions sustained.*